**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**E.G.**

     **Plaintiff,**

**v.**                                   **1:20-cv-00925-JB-LF**

**CITY OF ALBUQUERQUE, OFFICER**
**DOMINIC SANCHEZ, in his individual**
**Capacity and as employee of the City of**
**Albuquerque; and OFFICER RICHARD**
**ANDERSON, in his individual Capacity**
**And as employee of the City of Albuquerque,**

     **Defendants.**

### RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

COME NOW City of Albuquerque, Officer Dominic Sanchez and Officer Richard Anderson (hereafter "City Defendants") by and through their attorneys, Law Office of Jonlyn M. Martinez, LLC and hereby state, as will be more fully set forth below, that the Plaintiff failed to comply with D.N.M.LR-Civ. 37.1 and the Plaintiff failed to confer in good faith with counsel for the Defendants before filing her Motion to Compel. Therefore, the Defendants request that this Court deny the Plaintiff's Motion to Compel and award the Defendants the costs and fees incurred in responding to the Plaintiff's Motion.

### BACKGROUND

The underlying facts of this case are as follows:

The CPOA Investigator reviewed the police report, the CADs, the lapel videos, the photos taken by the FI, and the supervisory level force investigation. A security guard in the area called in a domestic dispute where Ms. G assaulted her boyfriend. The videos showed officers responded and observed Ms. G screaming at a man while on the sidewalk. Officer S contacted Ms. G, but she continued to walk backwards away from the officer, almost

1

falling. Officer S told her he was there to help and wanted to talk to her. She had scrapes on her knees and a nasal injury when he first saw her. As Officer S came closer, the video showed Ms. G rushed him and tried to push or strike him. Officer S and Officer A attempted to grab Ms. G who turned and struck Officer A. Officers restrained her against the wall in order to handcuff her. Ms. G kicked the officers and managed to kick one of them in the groin. She lost her balance and the officers lowered her to the ground.

The videos showed Ms. G's behavior was erratic, but most of the time she screamed various phrases of profanity and called the officers numerous insulting names. The videos showed the officers asked Ms. G how she received her injuries, but she did not answer and instead responded with profanity and insults. Ms. G made several statements that did not make sense. The officers asked Ms. G what happened that night, but she did not answer other than with profanity. Ms. G made several statements that the officers should hit her and sometimes alleged that the officers already hit her despite the videos showing the officers did not strike Ms. G. At one point when Ms. G alleged officers touched her; Officer A explained he did not want to, but laid hands on because she attacked them. Her response was, "Like I wanted to be raped by a man (the last couple of words were incomprehensible). Officer A immediately asked her when that happened, but she did not respond with any information other than insults to the officers. Officer A told her it seemed like a lot was going on that they did not know, but she claimed she told them, which the video showed she had not. This was the one and only time she mentioned anything about a sexual assault. Ms. G did not allege the assault happened that night or provide any information that the officers could investigate. The videos showed officers asked her later if she wanted to tell them what was going on and she spoke she did not. Ms. G continued to make nonsensical statements and said very little except for profanity and insults. Rescue arrived and she agreed she wanted to go to the hospital when they asked. However, she was so combative by kicking at the gurney and thrashing against the officers that Rescue administered a sedative. Officers eventually were able to restrain her on the gurney and she was transported to the hospital. The lapel videos showed the officers were very professional with Ms. G despite her belligerence.

A supervisory use of force investigation was conducted due to physical force used from resisted handcuffing and her allegations she was hit. The physical force used was within policy. Officers grabbed her by her arms and wrists and lowered to the ground after she was combative. Ms. G did not report a sexual assault to the supervisor when he attempted to interview her for the use of force investigation. Ms. G refused to provide any information about what happened that night and refused to answer the officer's question about the sexual assault when

> she brought it up. Ms. G did not report anything hours later to the officer that transported her to jail. Since no sexual assault examination occurred at the hospital, she presumably did not report anything to medical staff either. Ms. G still has the opportunity to report the sexual assault for investigation. Ms. G also has the opportunity to report her suspicion of being drugged for investigation.

*See CPOA letter dated April 12, 2019*, attached hereto as Exhibit A. Notably, this excerpt is contained in the findings of the investigation conducted by the Civilian Police Oversight Agency into the complaint made by the Plaintiff concerning the Defendants. While the Plaintiff requested that this document be produced by the Defendants in discovery, it was at all times material hereto in the Plaintiff's possession, as it was mailed to her via certified mail on April 12, 2019. *Id*. Yet, this document is not listed in the Plaintiff's Initial Disclosures.[1] *See Plaintiff's Initial Disclosures*, attached hereto as Exhibit C.

Due to the fact that lapel videos exist concerning the Plaintiff's interaction with the Defendants, the Defendants filed a Motion for Summary Judgment so that this Court could determine whether the Defendants had the requisite probable cause to arrest the Plaintiff and whether the individually named Defendants were entitled to qualified immunity. *See Motion for Summary Judgment* [Document No. 13]. Pursuant to United States Supreme Court precedent, holding that officials should not be burdened with the obligations of litigation once they have raised the defense of qualified immunity, the Defendants filed a Motion to Stay. *See Motion to Stay* [Document No. 14], citing *Siegert v. Gilley*, 114 L. Ed. 2d 277, 111 S. Ct. 1789, 1793

---

[1] This document, as well as documents related to the use of force investigation, which determined that the force used on the Plaintiff was reasonable under the circumstances, were produced to the Plaintiff on December 23, 2020, pursuant to counsel for the Defendant's agreement that such items would be requested from the City and produced. *See email transmitting results of Plaintiff's Complaint and use of force documents dated December 23, 2020*, attached hereto as Exhibit B.

(1991), and see ***Ashcroft v. Iqbal***, 129 S. Ct. 1937, 1953 (2009). Despite this Motion, the

Defendants responded to the Plaintiff's discovery requests.

The Plaintiff failed to confer with the Defendants in good faith regarding the Plaintiff's

claim that the Defendant's discovery responses were insufficient. ***See Exhibit A***, attached to

Plaintiff's Motion to Compel [Document No. 37-1]. A review of the correspondence reveals the

following: Counsel for the Plaintiff sent counsel for the Defendant an email on November 30,

2020, listing the purported deficiencies in the Defendant's discovery responses. ***Id***. In this email,

counsel for the Plaintiff states "[w]e have made Monell claims among others which allows us to

inquire whether these officers were properly trained." ***Id***.  On December 4, 2020, counsel for the

Defendant responded and stated  that she was attempting to determine whether there was a POA

or POB complaint. ***Id***. Counsel for the Plaintiff inquired about the remaining items in her email.

***Id***. Counsel for the Defendant stated:

> We have a motion to stay pending which has not been ruled on. If the Defendants'
> dispositive motion is successful that will resolve the Plaintiff's Monell claims.
> Therefore, I suggest that the parties agree that you do not need to file a motion
> concerning the Defendants objections in accordance with D.N.M.LR-Civ. 26.6
> until after the Court rules on the Defendants' dispositive motion.

***Id***. The Plaintiff responded that she could not budge on her position. ***Id***. On December 11, 2020,

counsel for the Plaintiff again sent an email stating she was following up on outstanding

discovery as her deadline to file a motion to compel was approaching. ***Id***. Counsel for the

Defendant informed counsel for the Plaintiff that she was in a deposition and reiterated that she

would agree to an extension for the Plaintiff to file her motion. ***Id***. The Plaintiff responded: "Ok

let's connect about this Monday." ***Id***. Instead of communicating with counsel for the Defendant

on Monday, December 14, 2020, the Plaintiff filed her Motion to Compel. Significantly, the

Plaintiff failed to attach the purportedly deficient discovery responses, in violation of D.N.M.LR-Civ. 37.1. These failures are sufficient to warrant the denial of the Plaintiff's Motion to Compel.

## POINTS AND AUTHORITIES

Courts in this jurisdiction have discussed the importance of complying with the Rules of Civil Procedure by conferring before filing a motion to compel. In ***Sartori v. Susan C. Little & Assocs., P.A***., No. 12-515 JB/LFG, 2013 U.S. Dist. LEXIS 191422, at *2-3 (D.N.M. Mar. 8, 2013), this Court stated:

> Before filing a motion to compel discovery, the moving party must include a certification that he or she "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). In addition, lawyers in this District must comply with "A Creed of Professionalism of the New Mexico Bench and Bar." D.N.M. LR Civ. 83.9. The Creed requires that counsel communicate with opposing counsel "in an effort to avoid litigation or to resolve litigation." The Creed also mandates that counsel attempt to resolve, "by agreement, [] objections to matters contained in [] opponent's pleadings and discovery requests." ["Creed of Professionalism of the New Mexico Bench and Bar," Lawyer's Preamble, P D, found in the 2012-13 State Bar Bench and Bar Directory, at p. 180.] *See also* D.N.M. LR-Civ. 7.1(a) (before filing a motion, movant must determine if motion is opposed, and if the movant omits recitation of a good-faith ] request for concurrence, the court may summarily deny the motion).

> This good-faith requirement is not simply a matter of good practice, it is a precondition to filing a motion. Moreover, an <u>attempt</u> to confer is a "far cry from conferring in good faith." <u>Madison v. Harford County, Md.</u>, 268 F.R.D. 563, 564 (D. Md. 2010). Indeed, sending opposing counsel one email does not constitute good-faith communications. *See* <u>Kemp v. Harris</u>, 263 F.R.D. 293, 297 (D. Md. 2009). In <u>Hoelzel v. First Select Corp.</u>, 214 F.R.D. 634, 635-36 (D. Colo. 2003), the district court determined that the obligation "to confer" meant more than simply making a demand for compliance, and that parties were required "to hold a conference, compare views, consult together."

This Court has stated:

> In the context of discovery and other non-dispositive motions, local rule 7.1's meet-and-confer requirement is not meant to be perfunctorily satisfied. It is designed to encourage parties to contact each other -- preferably in-person or by

> telephone, rather than via letter or electronic-mail transmission -- and work out mutually agreeable solutions to kinks that arise in the flow of discovery, extensions to prearranged schedules, and pragmatic compromises on scope-of-discovery disputes. The District encourages such solutions for essentially the same reasons that it encourages settlement of cases: they conserve judicial resources, vest the decisionmaking in the hands of the people with the most familiarity with the dispute, and result in outcomes that are, by definition, agreeable to all parties concerned. If an agreed-upon solution can be reached, then doing so is generally preferable to having the same dispute resolved by judicial fiat.

*N.M. ex rel. Balderas v. Valley Meat Co*., LLC, No. CIV 14-1100 JB/KBM, 2015 U.S.

Dist. LEXIS 72874, at *65 (D.N.M. May 20, 2015).

In the present case, the Plaintiff is aware that the Defendant has filed a dispositive motion and a Motion to Stay. The Defendant agreed to locate any POA or POB complaints related to the Plaintiff's arrest and indeed, the Defendants located and produced the investigation into the Plaintiff's complaint and all documents related to the use of force investigation referenced therein. ***See email transmitting records***, attached hereto as Exhibit B. Despite the Defendants' agreement to produce these records and despite the Defendants' agreement to give the Plaintiff an open-ended extension to file a motion a motion to compel, the Plaintiff  filed this Motion to Compel without meaningfully conferring with counsel for the Defendants.

### A.  The Plaintiff's Request for Supplementation Are Without Merit

<u>**City of Albuquerque's Discovery Responses:**</u>

<u>**INTERROGATORY NO. 3:**</u> Explain in great detail the steps officers are supposed to take when someone with whom they encounter state they have been raped. Please support your statement by making reference directly to what training, SOP or other procedure or document you are making reference to in responding.

<u>**ANSWER:**</u> The Albuquerque Police Department has a policy requiring its officers to investigate all violent crimes within the city of Albuquerque that are brought to their attention. Officers are required to follow all General Orders, Procedural Orders and Administrative Orders. SOP 2-66 and SOP 2-91 specifically address investigations of violent crimes. These Standard Operating Procedures can be found at

Standard Operating Procedures — City of Albuquerque (cabq.gov)

**REQUEST FOR PRODUCTION NO. 1:** Please produce copies of all Albuquerque Police Department policies and procedures, specifically regarding responding to reports of sexual assault or someone who is having a mental health issue.

**RESPONSE:** The Albuquerque Police Department Standard Operating Procedures can be found at Standard Operating Procedures — City of Albuquerque (cabq.gov)

In her correspondence requesting supplementation, the Plaintiff asked Defendants to confirm that the contents of the Defendant's Interrogatory response. Counsel for the Plaintiff states "Please confirm that the response to Rog #3 and RFP #1 and specifically the steps officers are to take re encounters with someone who states they have been raped are limited to your responses 'SOP 2-66 and SOP 2-91.' You provide the link to a lot of SOP and we simply want the ones that deal with our very specific question." ***See Plaintiff's Request for Supplementation*** [Document No. 37-1, p. 4].

With regard to Interrogatory No. 3, the Rules of Civil Procedure do not require that a party "confirm" the contents of a discovery response. Further, the Defendant provided the Plaintiff with the specific number of the Standard Operating Procedures at issue. The online Standard Operating Procedures are organized numerically and by title. ***See screenshot of online Standard Operating Procedures***, attached hereto as Exhibit D. Thus, there is nothing deficient about the Defendant's response to Interrogatory No. 3. The Defendant provided the Plaintiff with a link to the requested documents. The Plaintiff simply had to click on the listed Standard Operating Procedures to obtain a copy of SOP 2-66 and SOP 2-91. Therefore, it appears that the Plaintiff did not even attempt to download SOP 2-66 and SOP 2-91 through the link provided before she filed her Motion to Compel.

In the Plaintiff's Motion to Compel, the Plaintiff contains a new argument not contained in her request for supplementation, the Plaintiff argues that she should not be left to guess as to which SOP might pertain. ***See Plaintiff's Motion to Compel***, [Document No. 37, at p. 3]. Yet, a review of the Plaintiff's request for supplementation reveals that at no time did the Plaintiff request any supplementation concerning her request for Standard Operating Procedures concerning individuals with mental illness. ***See Plaintiff's Request for Supplementation*** [Document No. 37-1, p. 4].  Thus, despite the Plaintiff's failure to request supplementation in this regard, the Plaintiff has included this as grounds for her Motion to Compel in violation of D.N.M. LR-Civ. 7.1(a) and her requirement to confer in good faith.

Despite the Plaintiff's failure to request supplementation in this regard, the Defendant will address the Plaintiff's argument contained in her Motion to Compel. The Plaintiff argues that she should not be required to review each Standard Operating Procedure to determine what might pertain. As set forth above, the Defendant specifically referred the Plaintiff to the Standard Operating Procedures dealing with investigations of sexual assault.  The remaining portion of Request is vague and requests all policies related to someone having a mental health issue. Had the Plaintiff raised this as an issue, the Defendant would have requested additional clarification. Based on the nature of the Plaintiff's request, it is unknown whether the Plaintiff seeks the Standard Operating Procedure entitled "SOP 1-4 Biased Based Policing/Profiling,"  "SOP 1-10 Peer Support Program," "SOP 1-20 Behavioral Sciences Section," "SOP 1-25 Chaplain Unit," or other Standard Operating Procedures which discuss mental health issues. Therefore, the Defendant referred the Plaintiff to all of its Standard Operating Procedures with their titles so that the Plaintiff could have access to all such policies. Thus, the Plaintiff's Motion to Compel is without merit and should be denied.

8

**REQUEST FOR PRODUCTION NO. 2:**   Please produce copies of any and all internal investigations and the review done by the CABQ Civilian Police Oversight Agency/Police Oversight Board, including interviews, records, e-mails, memos, notes, audio or video, including all electronically stored information, audits and Metadata concerning the arrest of E.G. from September 9, 2018, to the present.

**RESPONSE:** The Defendant could not locate documents responsive to this Request. There was no internal investigation conducted into this matter.

In response to the Plaintiff's request for supplementation, counsel for the Defendant informed counsel for the Plaintiff that it would look for any POA or POB complaints. In her Motion, the Plaintiff argues that the Defendant should be required to provide this information by a particular date. The Defendant has already provided the Plaintiff with this information. ***See Exhibit B***, attached hereto. Notably, the Defendant did locate an investigation into a complaint made by the Plaintiff. ***See Exhibit A***, attached hereto. While the Plaintiff requested that this document be produced by the Defendants in discovery, it was at all times material hereto in the Plaintiff's possession, as it was mailed to her via certified mail on April 12, 2019. ***Id***.  Yet, this document is not listed in the Plaintiff's Initial Disclosures.  ***See Plaintiff's Initial Disclosures***, attached hereto as Exhibit C. The Defendant also produced the use of force investigation referenced in the Civilian Police Oversight Agency investigation. ***See Exhibit B***, attached hereto. Therefore, again, the Plaintiff's Motion to Compel is without merit and should be denied.

**REQUEST FOR PRODUCTION NO. 3:**   Please provide documentation of any injuries Officers Anderson, Sanchez, or Mr. Vozza claimed or sustained in the events of September 9, 2018, involving E.G., including photographs and medical reports.

**RESPONSE:** The Defendant objects to this Request to the extent it seeks information protected from discovery by HIPAA. Subject to these objections, without waiving same, the Defendant states that the Plaintiff has photos of the officers' injuries.

The Plaintiff does not take issue with the Defendant's objection, but states "if there were no injuries to Defendants then Defendants should state that clearly as the response is read as there were injuries and they are on the pictures Plaintiff has, which they are not." The Defendant

was responding to a Request for Production, not an Interrogatory. Thus, the Plaintiff's request

for a declaratory response is inappropriate. A request for production allows a party to request any

designated documents or any designated tangible things. Fed. R. Civ. P. 34(a)(1). The Defendant

referred the Plaintiff to photographs taken of the Defendants, which are in the Plaintiff's

possession. Therefore, the Defendant properly responded to the Plaintiff's Request for

Production and the Plaintiff's Motion to Compel should be denied.[2]

**REQUEST FOR PRODUCTION NO. 4:**  Please produce complete, unredacted copies of the employment files, including training and disciplinary records of Defendants Officer Anderson and Officer Sanchez.

**RESPONSE:** The Defendant objects to this Request because it is not proportional to the needs the case, and is not reasonably calculated to lead to the discovery of admissible evidence. The "desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Burks v. Okla. Pub. Co.*, 81 F.3d 975, 981 (10th Cir. 1996). A court is not required to permit parties to engage in a "fishing expedition" in the hopes of supporting their claims. *McGee v. Hayes*, 43 Fed. Appx. 214, 217 (10th Cir. 2002). The Court "must limit the frequency or extent of discovery otherwise allowed by [the rules] or by local rule if it determines that … the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). When relevancy of requested discovery "is not readily apparent on its face, the party seeking discovery has the burden to show the relevancy of the request." *Dentsply Int'l, Inc. v. Lewis and Roca, LLP*, No. 1:12-CV-00104-MCA/ACT, 2013 WL 12246642, at *3 (D.N.M. 2013).

As grounds for her Motion, the Plaintiff argues that Plaintiff has a right to the officers'

personnel files and Plaintiff states that she would not object to the entry of a confidentiality or

protective order regarding the files and to have any personal information redacted. *See*

*Plaintiff's Motion to Compel*, [Document No. 37, at p. 5]. This argument does not address the

nature of the Defendant's objection, as set forth above. The Plaintiff then cites a case from

Alaska,  *Jones v. Jennings*, 788 P.2d 732, 738 (Alaska 1990) for the proposition that access to

citizen complaints preserves democratic values. *Plaintiff's Motion to Compel*, [Document No.

---

[2] The Defendants object to any attempt by the Plaintiff to raise new arguments not contained in her Motion to Compel.

37, at p. 5].  Of course, this Request does not seek citizen complaints, instead it seeks the

individually named Defendants' personnel files, training files and disciplinary records. The

Plaintiff argues that she is entitled to this information because she has brought a *Monell* claim

against Defendant City of Albuquerque. The United States Supreme Court and the Tenth Circuit

have already ruled that a municipality may not be held liable where there was no underlying

constitutional violation by any of its officers. *City of Los Angeles v. Heller*, 475 U.S. 796, 799,

106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986); *Apodaca v. Rio Arriba County Sheriff's Dept.*,

905 F.2d 1445, 1447-48 (10th Cir.1990); and *Watson v. City of Kansas City*, 857 F.2d 690, 697

(10th Cir.1988). Thus, the Defendants appropriately requested that the Plaintiff wait until this

Court rules on the pending dispositive motion to determine whether a *Monell* claim exists. The

Defendants' requested course of conduct is reasonable and avoids undue expense and motion

practice. Again, instead of discussing this matter with counsel for the Defendants, the Plaintiff

proceeded to file her Motion to Compel. The Defendants submit that based on the lapel videos

submitted to the Court as part of the Defendants' Motion for Summary Judgment, the Defendants

did not violate the Plaintiff's rights and her federal claims are subject to dismissal. Therefore, the

Defendants properly objected to the Plaintiff's discovery requests and the Plaintiff's Motion to

Compel should be denied.

### Defendants Sanchez' and Anderson's Discovery Responses

**REQUEST FOR PRODUCTION NO. 1:** Please provide all documentation relating to
training you received regarding seizure, arrest, probable cause, interactions with victims of
sexual assault and copies of all associated training materials.

**RESPONSE:** The Defendant objects to this Request because it is not proportional to the
needs the case, and is not reasonably calculated to lead to the discovery of admissible evidence.
The "desire to allow broad discovery is not without limits and the trial court is given wide
discretion in balancing the needs and rights of both plaintiff and defendant." *Burks v. Okla. Pub.
Co.*, 81 F.3d 975, 981 (10th Cir. 1996). A court is not required to permit parties to engage in a
"fishing expedition" in the hopes of supporting their claims. *McGee v. Hayes*, 43 Fed. Appx.

214, 217 (10th Cir. 2002). The Court "must limit the frequency or extent of discovery otherwise allowed by [the rules] or by local rule if it determines that … the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). When relevancy of requested discovery "is not readily apparent on its face, the party seeking discovery has the burden to show the relevancy of the request." ***Dentsply Int'l, Inc. v. Lewis and Roca, LLP***, No. 1:12-CV-00104-MCA/ACT, 2013 WL 12246642, at *3 (D.N.M. 2013).

Defendants Sanchez and Anderson also stated that they objected to the Plaintiff's discovery requests because the Defendants have filed a dispositive motion asserting the defense of qualified immunity. This defense relieves the Defendants of their obligation to respond to discovery. ***Siegert v. Gilley***, 114 L. Ed. 2d 277, 111 S. Ct. 1789, 1793 (1991). ***See Defendants' discovery responses*** [Document No. 38-1]. The Plaintiff again argues that she has brought ***Monell*** claims which allows her to enquire as to whether these officers were properly trained. ***See Plaintiff's Motion to Compel***, [Document No. 37, at p. 6]. As set forth above, this claim is subject to dismissal by way of the pending dispositive motion.

The Defendant submits that the Defendants are entitled to a stay of discovery in this matter pursuant to clear United States Supreme Court and Tenth Circuit precedent. The Defendants responded to the Plaintiff's discovery requests and have merely requested that the Plaintiff wait for the Court's decision on the pending dispositive motion before the Defendants are required to produce file materials that will likely not be relevant to the Plaintiff's claims. This course is reasonable under the circumstances and complies with the proportional needs of the case and Fed. R. Civ. P. 26. Therefore, the Defendants request that this Court deny the Plaintiff's Motion to Compel.

Fed. R. Civ. P. 37(a)(5)(B) provides that if the motion is denied, the court must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party who opposed the motion its reasonable attorney's fees. Therefore, the Defendants

request that this Court deny the Plaintiff's Motion to Compel and award the Defendants their fees incurred herein.

## CONCLUSION

Based on the foregoing, the Plaintiff failed to confer in good faith in accordance with D.N.M. LR-Civ. 7.1(a). In addition, the Plaintiff failed to comply with D.N.M.LR-Civ. 37.1 because she failed to attach a copy of the Defendants' discovery responses to her Motion to Compel. Further, a review of the Plaintiff's Motion reveals that it lacks merit. Therefore, the Defendants request that this Court deny the Plaintiff's Motion to Compel and award the Defendants their attorney's fees incurred in responding to this Motion.

Respectfully submitted:

LAW OFFICE OF JONLYN M. MARTINEZ, LLC

By: */s/ Jonlyn M. Martinez*
    JONLYN M. MARTINEZ
    Attorney for Defendants
    P.O. Box 1805
    Albuquerque, NM 87103-1805
    P: (505) 247-9488
    jonlyn@jmartinezlaw.net

I hereby certify that a copy of the foregoing
was served via CM/ECF on December 28, 2020
to all counsel of record:


*/s/ Jonlyn M. Martinez*